UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHANIE HOLTZ,

                Plaintiff,

       v.

TOWN OF ARCADIA,

              Defendant.

_____

**DECISION AND ORDER**

6:22-CV-06449 EAW

## INTRODUCTION

Plaintiff Stephanie Holtz ("Plaintiff") brings this action against the Town of Arcadia ("Defendant" or "the Town") arising from the termination of her employment as the Town's sole assessor. Defendant has filed a motion for judgment on the pleadings and/or for summary judgment (Dkt. 44) and Plaintiff has cross-moved for summary judgment (Dkt. 53).

For the reasons that follow, Defendant's motion is granted in part and denied in part and Plaintiff's cross-motion is denied.

## BACKGROUND

### I.    Factual Background

Plaintiff is a New York State assessor. (Dkt. 53-1 at ¶ 5; Dkt. 60-24 at ¶ 5). The Town was and is a municipal corporation duly organized and existing under the laws of the State of New York, having its principal offices located at 201 Frey Street in Newark, New York. (Dkt. 53-1 at ¶ 3; Dkt. 60-24 at ¶ 3). Prior to her employment with the Town,

Plaintiff was previously the sole assessor for the Town of Victor, where she was appointed to fill the remaining term of the prior assessor and was initially on probation when hired. (Dkt. 44-14 at ¶ 7; Dkt. 61-3 at ¶ 7).

On September 30, 2020, Plaintiff received a letter offering her the position of sole assessor for the Town. (Dkt. 44-14 at ¶¶ 6, 17; Dkt. 61-3 at ¶¶ 6, 17; Dkt. 53-1 at ¶ 12; Dkt. 60-24 at ¶ 12). The offer letter provided that Plaintiff's "appointment will be for a term of 6 years," and would be "in compliance with the NYS guidelines." (Dkt. 53-1 at ¶¶ 13, 14; Dkt. 60-24 at ¶¶ 13, 14). The letter was signed by Plaintiff and Jon Verkey, the Supervisor of the Town, on October 8, 2020. (Dkt. 53-1 at ¶ 15; Dkt. 60-24 at ¶ 15). The offer letter reflected an annual salary of $66,000 for the assessor's position and provided it would continue to accrue at a 2% increase every year until the completion of the term. (Dkt. 53-1 at ¶ 26; Dkt. 60-24 at ¶ 26).

Plaintiff's start date of employment with the Town was October 19, 2020. (Dkt. 44-14 at ¶ 19; Dkt. 61-3 at ¶ 19; Dkt. 53-1 at ¶ 1; Dkt. 60-24 at ¶ 1). Barb DiSanto ("DiSanto") was an assessor clerk who worked in the office with Plaintiff. (Dkt. 44-14 at ¶ 8; Dkt. 61-3 at ¶ 8). Plaintiff knew that she would be working with DiSanto when she accepted the position with the Town. (Dkt. 44-14 at ¶ 10; Dkt. 61-3 at ¶ 10). Plaintiff testified that while employed with the Town, DiSanto was "my clerk." (Dkt. 44-14 at ¶ 11; Dkt. 61-3 at ¶ 11). Supervision over the work of clerical staff was included in the assessor's job description. (Dkt. 44-14 at ¶ 16; Dkt. 61-3 at ¶ 16).

Plaintiff had concerns about DiSanto's job performance because, among other things, DiSanto made repeated errors, including careless spelling and math errors, and her

behavior was erratic.  (Dkt. 44-14 at ¶ 13; Dkt. 61-3 at ¶ 13).  Plaintiff testified that she contacted Wayne County to obtain DiSanto's job description and felt that it was her job to report issues with DiSanto because DiSanto's mistakes impacted the taxpayers of the community.  (Dkt. 44-14 at ¶¶ 14, 15; Dkt. 61-3 at ¶¶ 14, 15).

In an August 25, 2021 email to Richard VanLaeken, the Deputy Town Supervisor, Plaintiff wrote: "[o]ne more thing is my probation is up in October.  I'm not sure if the Board will be keeping me on or not," though Plaintiff denies that this email operated as an acknowledgment of her employment status.  (Dkt. 44-14 at ¶ 18; Dkt. 61-3 at ¶ 18).

Plaintiff was terminated on September 23, 2021.  (Dkt. 44-14 at ¶ 19; Dkt. 61-3 at ¶ 19; Dkt. 53-1 at ¶ 22; Dkt. 60-24 at ¶ 22).  When Plaintiff asked why she was being terminated, the Deputy Town Supervisor advised her that it was because Plaintiff "was not happy here" and they "can't have tension in the town hall."  (Dkt. 53-1 at ¶ 23; Dkt. 60-24 at ¶ 23).  Plaintiff filed a Notice of Claim on or about November 15, 2021.  (Dkt. 53-1 at ¶ 26; Dkt. 60-24 at ¶ 26).  Plaintiff never commenced an Article 78 proceeding against the Town with regard to her termination or for a claim of entitlement to a hearing.  (Dkt. 44-14 at ¶ 20; Dkt. 61-3 at ¶ 20).

In her complaint filed on September 13, 2022 (Dkt. 1-2 at 6-19), Plaintiff asserts four claims against Defendant: (1) wrongful termination in violation of Real Property Tax Law § 310(2) and New York Public Officers Law § 36; (2) violation of civil service law § 75-b; (3) First Amendment retaliation pursuant to 42 U.S.C. § 1983; and (4) violation of due process pursuant to 42 U.S.C. § 1983.

## II.    <u>Procedural Background</u>

Plaintiff filed this action in Wayne County Supreme Court on September 13, 2022, against the Town and the Village of Newark.[1]  (Dkt. 1-2).  On October 18, 2022, the Town removed the action to federal court on the basis of federal question jurisdiction and filed its answer.  (Dkt. 1; Dkt. 2).  On July 11, 2023, the Town filed an amended answer.  (Dkt. 31).

On August 26, 2024, the Town filed the instant motion for summary judgment and for judgment on the pleadings.  (Dkt. 44).  On October 17, 2024, Plaintiff filed her opposition (Dkt. 61), and on November 1, 2024, the Town filed its reply (Dkt. 64).

On August 29, 2024, Plaintiff filed her cross-motion for summary judgment.  (Dkt. 53).  On October 17, 2024, the Town filed its opposition to Plaintiff's motion (Dkt. 60), and on November 1, 2024, Plaintiff filed her reply (Dkt. 66).[2]

## <u>DISCUSSION</u>

## I.    <u>Legal Standards</u>

### A. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment

---

[1]    By Stipulation and Order entered September 20, 2024, all claims and crossclaims asserted by or against the Village of Newark were dismissed and the Village of Newark was terminated as a party.  (Dkt. 59).

[2]    Outside the briefing schedule set for these motions, both parties submitted a letter to the Court regarding an argument made in Plaintiff's reply.  (Dkt. 67; Dkt. 68).  The Court has considered the submissions although their contents were not material to the determination of the pending motions.

on the pleadings." Fed. R. Civ. P. 12(c).  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (internal quotation marks and citation omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen*

*v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### B. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (quotation marks, internal citations, and footnote omitted).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original). Where, as here, there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## II.    **The Parties' Motions**

The Town moves for summary judgment and/or to dismiss each of Plaintiff's four claims and her request for punitive damages.  Conversely, Plaintiff seeks summary judgment against the Town arguing that the Town unlawfully terminated her and failed to provide the due process to which she was entitled.

### A.  Real Property Tax Law § 310(2) and New York Public Officers Law § 36

Plaintiff's first claim alleges that Defendant violated New York's Real Property Tax Law § 310(2) and New York Public Officers Law § 36.  Real Property Tax Law provides that "[t]he term of office of assessor shall be six years except as otherwise provided in subdivision seven of this section."[3]  N.Y. Real Prop. Tax Law § 310(2).  New York Public Officers Law § 36 provides:

> Any town, village, improvement district or fire district officer, except a justice of the peace, may be removed from office by the supreme court for any misconduct, maladministration, malfeasance or malversation in office. An application for such removal may be made by any citizen resident of such town, village, improvement district or fire district or by the district attorney of the county in which such town, village or district is located, and shall be made to the appellate division of the supreme court held within the judicial department embracing such town, village, improvement district or fire district.  Such application shall be made upon notice to such officer of not less than eight days, and a copy of the charges upon which the application will be made must be served with such notice.

---

[3]    Subsection 7 provides: "Indefinite term for assessors.  Notwithstanding the provisions of subdivision two of this section, the office of assessor shall have an indefinite term (a) where the office of assessor is a full time position as determined by the local legislative body and on or after August first, nineteen hundred seventy is classified in the competitive class of the civil service at the request of the local legislative body or (b) where on July thirty-first, nineteen hundred seventy the office of assessor is classified in the competitive class of the civil service and has an indefinite term pursuant to law."  N.Y. Real Prop. Tax Law § 310(7).  No party contends that this subsection applies.

N.Y. Pub. Off. Law § 36.  This statute "was enacted to enable a town or village to rid itself of an unfaithful or dishonest public official."  *Salvador v. Ross*, 61 A.D.3d 1163, 1164 (3d Dep't 2009) (quoting *Matter of Miller v. Filion*, 304 A.D.2d 1016, 1017 [3d Dep't 2003])).  Taken together, Plaintiff contends that her term as assessor was for six years, that she could be removed only for misconduct, maladministration, malfeasance or malversation in office, and that Defendant's removal of her from her position did not amount to just cause under these statutes.

Defendant moves to dismiss this claim on the grounds that these statutes do not create an independent private right of action for Plaintiff and that the relief Plaintiff seeks is exclusively available in an Article 78 proceeding.  The Court agrees.

As an initial matter, Plaintiff cites no authority that these statutes authorize her pursuit of a private right of action challenging her removal from office.  Rather, she argues that given that New York Civil Service Law § 77 provides for damages, "Plaintiff does not need to establish a separate right to damages for violation of N.Y. Public Officers Law § 36." (Dkt. 61 at 6).  The Court construes this as a concession by Plaintiff that there is no express private right of action under these statutes, although that does not end the inquiry.

"Where a statute contains no express private right of action, a plaintiff can seek relief for a violation of the statute 'only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history.'"  *Galante v. Watermark Servs. IV, LLC,* 722 F. Supp. 3d 170, 185-86 (W.D.N.Y. 2024) (quoting *Konkur v. Utica Academy of Science Charter Sch.*, 38 N.Y.3d 38, 40-41 (2022)).  "The New York Court of Appeals applies a 'three-factor test to determine whether the legislative intent

favors an implied right: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.'" *Id.* "Consistency with the legislative scheme is 'the most important [factor] and typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others,' because that choice 'demonstrates that the legislature considered and decided what avenues of relief were appropriate.'" *Id.* at 186 (quoting *Konkur*, 38 N.Y.3d at 41).

Plaintiff contends in a conclusory manner that all three factors are met but cites no authority that would warrant court recognition of such right. (*See* Dkt. 61 at 6). Indeed, the purpose of the Public Officers Law is to provide a town or village with a procedure for removal of an officer and does not speak in terms of the process for the officer to challenge the determination. *See, e.g., Salvador v. Naylor*, 222 A.D.2d 931, 931 (3d Dep't 1995) ("The purpose of Public Officers Law § 36 is to enable a town or village to rid itself of an unfaithful or dishonest public official." (quotation and citation omitted)). Accordingly, the Court declines to adopt Plaintiff's argument that a private right of action exists in the absence of any legal support for that position.

In addition, the Town argues that the appropriate forum for such challenges is an Article 78 proceeding. Again, the Court agrees, as it is "well settled that proceedings that compel action by a government agency or challenge the reasonableness or legality of an administrative decision must be brought in Supreme Court as an article 78 proceeding." *Spillers v. City of New York*, 58 Misc. 3d 150(A), 94 N.Y.S.3d 540 (Kings Cty. 2018); *see*

*also Walsh v. New York State Thruway Auth.*, 24 A.D.3d 755, 756-57 (2d Dep't 2005) (claim that a plaintiff was terminated without hearing in violation of state law rights and sought reinstatement was "clearly within the purview of a CPLR article 78 proceeding, the proper procedural vehicle for reviewing such a termination"). Plaintiff's contention that the Town did not comply with New York state statutes comes within Article 78's purview. *Finley v. Giacobbe*, 79 F.3d 1285, 1292 (2d Cir. 1996) ("Even non-tenured or probationary employees must invoke article 78 to review dismissals that are allegedly arbitrary, capricious, or prohibited by statute or the constitution."); *Trask v. Town of Alma*, No. 1:19-CV-01192, 2020 WL 6390091, at *4 (W.D.N.Y. Oct. 30, 2020) ("In New York, Article 78 proceedings are the 'exclusive remedy for a discharged public employee, who must seek reinstatement prior to seeking unpaid salary[.]'" (quotation and citation omitted)); *Vill. of Northport v. Krumholz*, 169 A.D.3d 745, 746 (2d Dep't 2019) ("We agree with the Supreme Court's determination that the defendant [challenging termination pursuant to Public Officer Law § 36] was required to bring a proceeding pursuant to CPLR article 78 to pursue her claim of wrongful termination and to seek reinstatement and unpaid salary.").

Given the lack of any authority to support a conclusion that there exists a private right of action for Plaintiff to pursue independent claims under New York's Real Property Tax Law § 310(2) and New York Public Officers Law § 36 and the fact that the exclusive remedy for such claims is an Article 78 proceeding, Defendant's motion to dismiss and/or for summary judgment on this claim is granted and Plaintiff's motion for summary judgment is denied.

### B. Civil Service Law § 75-b

"To state a claim under New York Civil Service Law section 75-b, a plaintiff must allege: (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which [he] reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action." *DeFranco v. New York Power Auth.*, No. 20-CV-1861-LJV, 2024 WL 1621533, at *10 (W.D.N.Y. Apr. 15, 2024) (quoting *Rusk v. New York State Thruway Auth.*, 37 F. Supp. 3d 578, 600 (W.D.N.Y. 2014)).

The Town first argues that Plaintiff's § 75-b claim is subject to dismissal because the statute requires that complaints be made to a governmental body, and it contends that Plaintiff did not complain directly to the Town Board. The statute defines "governmental body" to mean "(i) an officer, employee, agency, department, division, bureau, board, commission, council, authority or other body of a public employer, (ii) employee, committee, member, or commission of the legislative branch of government, (iii) a representative, member or employee of a legislative body of a county, town, village or any other political subdivision or civil division of the state, (iv) a law enforcement agency or any member or employee of a law enforcement agency, or (v) the judiciary or any employee of the judiciary." N.Y. Civ. Serv. Law § 75-b. Defendant cites no requirement or legal authority suggesting that any complaint needed to be made to the entire Town Board or that Plaintiff's complaints made to several different Town councilmembers (Dkt. 50-2 at ¶¶ 30-34), were insufficient as a matter of law.

But separate from whether Plaintiff can satisfy disclosure to a governmental body, a fundamental flaw in her claim is the fact that her complaints about DiSanto's misconduct, errors, and erratic behavior did not concern a violation of a law, rule, or regulation that endangers public health or safety, or which could reasonably be considered by her to constitute improper governmental action. "'Improper governmental action' is conduct 'which is in violation of any federal, state or local law, rule or regulation.'" *Verdi v. City of New York*, 306 F. Supp. 3d 532, 549 (S.D.N.Y. 2018) (quoting N.Y. Civ. Serv. Law § 75-b(2)(a)).

While Plaintiff argues that the Town's failure to properly address DiSanto's errors and inability to properly complete her job duties constituted gross mismanagement and waste of taxpayer funds, at bottom, Plaintiff's complaints about DiSanto and oversight of her work were within the scope of Plaintiff's job duties. *See Johnson v. Bd. of Educ. Ret. Sys. of City of New York*, No. 18CV4605(NGG)(PK), 2021 WL 2133434, at *7 (E.D.N.Y. May 11, 2021) (communications of internal dissent regarding matters within the ambit of plaintiff's employment did not constitute a report to a governmental body pursuant to §75-b), *aff'd,* No. 21-1465-CV, 2022 WL 17076718 (2d Cir. Nov. 18, 2022); *Eyshinskiy v. New York City Dep't of Educ.*, No. 15 CIV. 10027 (DLC), 2016 WL 7017414, at *2 (S.D.N.Y. Dec. 1, 2016) ("Disagreeing with the principals at Flushing about their standards in supervising him does not constitute a complaint to a governmental body."), *aff'd*, 692 F. App'x 677 (2d Cir. 2017). That taxpayers are entitled to be treated fairly does not make Plaintiff's complaints about DiSanto's errors rise to the level of a violation of any law, rule, or regulation that endangers public health or safety, or constitute an improper governmental

action, as required.  To hold otherwise would be to create a Civil Service Law § 75-b claim whenever a municipal employee voices concerns about an employee's performance, and it would essentially eradicate the second element required to assert such a claim.  In sum, Plaintiff has not adduced admissible evidence that her complaints about DiSanto fell within the scope of § 75- b's protections.

On this basis, Defendant's motion for summary judgment on this claim is granted and Plaintiff's motion for summary judgment is denied.

### C. First Amendment

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

To state a plausible claim for First Amendment retaliation, a plaintiff must allege: "(1) his speech or conduct was protected by the First Amendment; (2) [defendants] took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Persaud v. City of New York*, No. 1:22-CV-02919 (MKV), 2023 WL 2664078, at *4 (S.D.N.Y. Mar. 28, 2023) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *see also Searle v. Red Creek Cent. Sch.*

*Dist.*, No. 21-CV-6086-FPG, 2021 WL 5086405, at *4 (W.D.N.Y. Nov. 2, 2021) ("The

elements of a First Amendment retaliation claim are dependent on the 'factual context' of

the case." (quotation and citation omitted)).

As to the first element, the Supreme Court in *Lane v. Franks*, 573 U.S. 228 (2014),

outlined a two-step inquiry into whether a public employee's speech is entitled to

protection:

> The first [step] requires determining whether the employee spoke as a citizen
> on a matter of public concern. If the answer is no, the employee has no First
> Amendment cause of action based on his or her employer's reaction to the
> speech. If the answer is yes, then the possibility of a First Amendment claim
> arises. The question becomes whether the relevant government entity had an
> adequate justification for treating the employee differently from any other
> member of the general public.

*Id.* at 237 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)); *see also Shara v.*

*Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82-83 (2d Cir. 2022) ("So in assessing the

first prong of the retaliation test–whether a public employee's speech is protected–we must

consider 'two separate subquestions': (1) whether the employee spoke as a citizen rather

than solely as an employee, and (2) whether he spoke on a matter of public concern. . . . If

either question is answered in the negative, our inquiry may end there. If both questions

are answered in the affirmative, we may proceed to consider whether the employer had an

adequate justification for treating the employee differently from any other member of the

general public based on the government's needs as an employer." (citations and quotations

omitted)); *DiFonzo v. Cnty. of Niagara*, No. 1:22-CV-588, 2023 WL 1801695, at *5

(W.D.N.Y. Feb. 7, 2023) ("A public employee's speech 'is protected by the First

Amendment only when the employee is speaking as a citizen . . . on a matter of public

concern.'" (quoting *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012)) (internal quotation marks omitted)); *Cecchini v. Schenck*, No. 3:14-CV-1704 (MPS), 2017 WL 902849, at *9 (D. Conn. Mar. 7, 2017) ("To determine if a public employee's speech is protected by the First Amendment, courts must consider '(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke "as a citizen" rather than solely as an employee.'" (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011))). To assess whether a public employee is speaking pursuant to official duties, courts "examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two," as well as other contextual factors such as whether the plaintiff's speech "was also conveyed to the public." *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012); *see also Severin v. New York City Dep't of Educ.*, No. 19-CV-775 (MKV), 2023 WL 2752973, at *7 (S.D.N.Y. Mar. 31, 2023) ("In determining whether an employee spoke pursuant to his official duties, a key question is whether the complaint was part-and-parcel of his concerns about his ability to properly execute his duties." (citations and quotations omitted)), *aff'd*, No. 23-732-CV, 2024 WL 1904574 (2d Cir. May 1, 2024).

Defendant argues that Plaintiff's statements at issue cannot constitute constitutionally protected speech because at the time the statements were made, Plaintiff was not speaking as a citizen, but solely as an employee. It argues that if Plaintiff expressed concerns about a subordinate employee's misconduct or incompetence, it was within her professional responsibility to do so as the Town assessor. The Court agrees. Indeed, Plaintiff acknowledges that supervision of DiSanto was her responsibility and any misconduct by DiSanto directly interfered with Plaintiff's own job duties, leading to an

indisputable conclusion that the speech was not protected. *See Shara*, 46 F.4th at 80 (bus driver's disagreements with school district mechanic and school district officials over the frequency of bus inspection reporting did not constitute protected speech, regardless of whether the information impacted the safety of school children); *Barclay v. Michalsky*, 368 F. App'x 266, 267 (2d Cir. 2010) (complaints to supervisors that co-workers were mistreating patients and sleeping on the job was part of job duties and not speech as public citizen); *Johnson v. Bd. of Educ. Ret. Sys. of City of New York,* No. 18CV4605NGGPK, 2021 WL 2133434, at *6 (E.D.N.Y. May 11, 2021) ("Because he was reporting on a core job function within an established internal channel of communication, Johnson was not speaking as a citizen and his speech is not protected by the First Amendment."), *aff'd*, No. 21-1465-CV, 2022 WL 17076718 (2d Cir. Nov. 18, 2022).

There being no credible admissible evidence before the Court showing that Plaintiff's speech concerned matters outside the scope of her job duties or demonstrating the presence of factual issues on that point, Plaintiff's complaints cannot be considered to have been protected speech made as a citizen. Accordingly, Defendant's motion for summary judgment as to this claim is granted and Plaintiff's motion is denied.

### D. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment was "intended to secure the individual from the arbitrary exercise of the powers of government . . . [and] serves to prevent governmental power from being used for purposes of oppression." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (quotations and citations omitted). To succeed on a due process claim, a plaintiff must establish that "he or she possesses a constitutionally

- 16 -

protected interest in life, liberty, or property, and that state action has deprived him or her of that interest." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation omitted).

"To evaluate whether a plaintiff received due process, one of two standards may apply. If the deprivation is the result of 'unauthorized acts by state employees,' the Fourteenth Amendment is not violated 'so long as the State provides a meaningful post-deprivation remedy.' If the deprivation 'occurs in the more structured environment of established State procedures, rather than random acts, the availability of post-deprivation procedures will not, ipso facto, satisfy due process.'" *Langton v. Town of Chester*, 168 F. Supp. 3d 597, 606 (S.D.N.Y. 2016) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.,* 101 F.3d 877, 880 (2d Cir. 1996)). Instead, in such cases, the Court considers the adequacy of the pre-deprivation procedures, taking into account:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010).

Plaintiff argues that she had an enforceable expectation of continued public employment which constituted a property interest such that she could not be terminated

without the due process protections of notice and hearing.  Resolution of whether Plaintiff had a property interest in her continued employment is precluded on these motions by the existence of factual disputes over whether Plaintiff was a permanent or probationary employee.

Defendant contends that Plaintiff was still in a probationary period at the time of her termination and had no protected property interest in the position.  It relies on Rule XIV of the Wayne County Civil Service Commission Rules and Regulations which indicates: "Except as herein otherwise provided, every permanent appointment from an open competitive list and every original appointment to a position in the non-competitive, exempt or labor class shall be for a probationary term of not less than eight (8) nor more than fifty-two (52) weeks."  (Dkt. 44-10 § XIV).  Defendant contends that Plaintiff acknowledged her probationary status in an email to Deputy Town Supervisor VanLaeken where she stated, "my probation is up in October," which would have been one year from her start date.  In addition, prior to terminating Plaintiff, VanLaeken contacted the Wayne County Civil Service to confirm that Plaintiff was a probationary employee and was told that she was subject to a probationary term of 52 weeks.  (Dkt. 44-12 at ¶ 6).

Conversely, Plaintiff notes that there is no documentation to reflect her status as a probationary employee.  It is undisputed that the assessor position was a six-year term and the offer letter Plaintiff received did not state the appointment was probationary.  A Report of Personnel Change form dated October 20, 2020, and completed by the Town contained

in her file checked the box for "permanent" employee and left "probationary" unchecked.[4] (Dkt. 53-6).

As is clear, there are genuine issues of fact as to whether Plaintiff was permanent or probationary or even if probationary, the length of the probationary term or what process a probationary employee is due. Because these disputed issues as to Plaintiff's employment status necessarily dictate whether she possessed a property interest in her employment, the Court cannot resolve this question on a summary judgment motion. The court in *Reynolds v. Vill. of Chittenango*, No. 5:19-CV-416 (GLS/ML), 2023 WL 6460417 (N.D.N.Y. Oct. 4, 2023), faced a similar issue. There, the plaintiff asserted a due process claim and the defendant's motion for summary judgment required it to demonstrate "that there are no genuine issues of material fact, including with regard to their primary contention, that [plaintiff] was a probationary employee who was, therefore, not entitled to a hearing and had no property interest in continued employment." *Id.* at *8. The Court stated, "[in other words, essential to the analysis of [plaintiff's] Fourteenth Amendment claim is a determination of whether he was a probationary employee at the time he was terminated. The answer to this question—whether [plaintiff] was probationary—adjudges whether

---

[4]    The Court rejects Defendant's suggestion that the Court should not consider Defendant's own document for lack of proper authentication, particularly where no challenge is raised by it as to whether the document is authentic. *See PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, No. 19-CV-7577 (KMK), 2023 WL 2973038, at *4 (S.D.N.Y. Mar. 28, 2023) ("To the extent that Plaintiff's authentication and foundation objections rest upon documents Plaintiff itself produced, the Court will overrule this objection for the purposes of summary judgment."). In any event, Plaintiff has submitted a declaration from counsel explaining that the document was received from Defendant during discovery. (*See* Dkt. 66-1).

process was, in fact, due. However, the parties dispute a multitude of material facts, leaving this determination unresolved—and, for summary judgment purposes, unresolvable." *Id.* The court concluded that a finder of fact must resolve disputed issues as to whether plaintiff was a probationary employee at the time he was terminated and only then could the court determine whether any process was due. *Id.* So too here is the Court similarly constrained. *See also Morgenstern v. Cnty. of Nassau*, No. 04-CV-0058 JS ARL, 2008 WL 4449335, at *19 (E.D.N.Y. Sept. 29, 2008) ("Plaintiff alleges that Defendants violated New York Civil Service Law § 75 by terminating Plaintiff without a notice and hearing. Defendants argue that they did not violate the Civil Service Law because Plaintiff was a probationary employee and thus not entitled to a notice and hearing. . . . Because the Court has already found that there is an issue of fact as to whether Plaintiff was a permanent employee at the time of her termination, the Court cannot grant summary judgment for Defendants on this claim."); *Jackson v. Kemp*, No. 88 CIV. 2919 (LLS), 1991 WL 39300, at *1 (S.D.N.Y. Jan. 22, 1991) ("In addition, the degree to which such administrative procedures apply to plaintiff apparently depends upon resolution of factual issues concerning whether she was a 'probationary' or an 'excepted' or a 'full' employee. Accordingly, plaintiff's motion is also denied.").

In addition, the question of Plaintiff's employment status impacts not only the assessment of whether her termination was an unauthorized act by state employees or was consistent with established State procedures, but also whether Article 78 provides the exclusive remedy for Plaintiff's due process claim, as Defendant argues. In some cases, the availability of Article 78 proceedings can foreclose a federal due process claim. *See*

*McCluskey v. Lopez*, No. 24-381, 2024 WL 5182876, at *2 (2d Cir. Dec. 20, 2024) ("[U]nder some circumstances, the Supreme Court has said it is possible that 'a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process.'" (quoting *Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990))); *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes."); *Nolan v. Cnty. of Erie*, No. 1:19-CV-01245, 2020 WL 1969329, at *11 n.7 (W.D.N.Y. Apr. 24, 2020) ("Article 78 proceedings often constitute sufficient procedural due process foreclosing a § 1983 claim against municipalities."). But "[s]ufficient process 'is a flexible concept that varies with the particular situation,' considering factors that include the private interest affected, the risk of a wrongful deprivation of such interest under the procedures used, the probable value of additional or substitute procedural safeguards, and the burdens to the government that additional procedural protections might entail." *McCluskey*, 2024 WL 5182876, at *2.

Because here, Plaintiff contends that she did not receive pre-deprivation or post-deprivation procedures to which she was entitled, her right to which turns on her employment status, the Court cannot determine on these motions whether Article 78 provided adequate and exclusive relief. *See Todaro v. Norat,* 112 F.3d 598, 599-600 (2d Cir. 1997) (where a tenured employee has a right to notice and opportunity to be heard before termination, "certain features must be present to fulfill the minimum requirements of fairness" and post-termination proceedings do not satisfy those requirements); *Moulton v. Cnty. of Tioga, New York*, No. 3:22-CV-00340 (AMN/ML), 2024 WL 4836608, at *10 (N.D.N.Y. Nov. 20, 2024) (denying motion for summary judgment on procedural due

process claim where "a reasonable juror could very well find that a pre-deprivation hearing was required"); *Reynolds v. Vill. of Chittenango*, No. 519CV416GLSTWD, 2020 WL 1322509, at *6 (N.D.N.Y. Mar. 20, 2020) ("Here, Reynolds' alleges that defendants did not provide him with the pre-termination notice and hearing that was required under law and contract.  Accordingly, the availability of an Article 78 proceeding does not foreclose his procedural due process claim."); *Mullen v. Vill. of Painted Post*, 356 F. Supp. 3d 275, 282 (W.D.N.Y. 2019) (because plaintiff alleged he was not provided a meaningful pre-termination opportunity to respond, "a post-deprivation procedural safeguard such as an Article 78 proceeding does not automatically satisfy due process"); *Swain v. Town of Wappinger*, No. 17 CIV. 5420 (JCM), 2019 WL 2994501, at *8 (S.D.N.Y. July 9, 2019) (denying cross-motions for summary judgment and rejecting argument that Article 78 post-deprivation remedies defeat Plaintiff's due process claim because "the availability of an adequate post-termination remedy, whether through a CBA procedure or Article 78 hearing, does not satisfy due process if there was no pre-termination notice").

Accordingly, because the nature of the process due Plaintiff is unresolved at this time, the Court cannot resolve Defendant's argument that the availability of Article 78 proceedings may ultimately preclude Plaintiff's due process claim.  Similarly, because the Court denies Plaintiff's motion for summary judgment because of issues of fact related to her employment status, so too is it unable to resolve the question of what damages are applicable should Plaintiff succeed on her claims.

For these reasons, both parties' motions for summary judgment on Plaintiff's due process claims are denied.

### E.  Punitive Damages

Finally, Defendant moves to dismiss Plaintiff's request for punitive damages, arguing that such claim is barred against a municipality.  Plaintiff did not respond to this argument.

"[P]unitive damages are not *per se* unavailable against a municipality," although there "is a common-law presumption against the availability of punitive damages from municipalities, and thus '[t]he general rule . . . is that no punitive damages are allowed unless expressly authorized by statute." *Jordan v. City of New York*, No. 23CV4962 (DLC), 2024 WL 4872186, at *3 (S.D.N.Y. Nov. 22, 2024) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-64 & n.21 (1981)).  The Second Circuit has clarified that a statute need not specifically state that punitive damages are recoverable from a municipality so long as the statute permits punitive damages without exception.  *Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 112 F.4th 93, 103 (2d Cir. 2024).  Here, as noted, Plaintiff provided no authority to establish that punitive damages are available from Defendant on her claims and the Court presumes they are not.  *See, e.g.*, *Baumeister v. Erie Cnty.*, No. 23-CV-1150-LJV, 2024 WL 4362311, at *15 (W.D.N.Y. Sept. 30, 2024) (holding municipalities immune from claims of punitive damages in a section 1983 action); *Zielonka v. Town of Sardinia*, 120 A.D.3d 925, 926 (4th Dep't 2014) ("[T]he Town cannot be held liable for punitive damages [pursuant to § 75-b] absent an express provision in the statute.").

Moreover, "[i]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have

been abandoned." *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 20 n.4 (E.D.N.Y. 2020) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)); *see also Kurtz v. Hansell*, No. 20 CIV 3401 (PAE), 2021 WL 1143619, at *16 (S.D.N.Y. Mar. 24, 2021) (holding that by failing to respond to argument on motion to dismiss "plaintiffs have abandoned that claim"); *East v. Roosevelt Union Free Sch. Dist.*, No. CV193709JSAKT, 2020 WL 13753159, at *20 (E.D.N.Y. July 31, 2020) ("Courts in the Second Circuit have found that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims.'" (quoting *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2018))); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 TPG FM, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").  For these reasons, any such claim for punitive damages has been abandoned and Defendant's motion to dismiss such relief is granted.[5]

---

[5]      In addition, to the extent that the parties argue over whether the Court should read Plaintiff's complaint to state claim for "Monell Liability," "*Monell* [*v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)] does not provide an independent separate cause of action against a municipality; 'it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation,'" *Gem Fin. Serv., Inc. v. City of N.Y.*, 298 F. Supp. 3d 464, 490 (E.D.N.Y. 2018) (quoting *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006)). "In other words, *Monell* is not a cause of action, but is rather a form of liability." *Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 118-19 (W.D.N.Y. 2022).  Here, apart from the due process claim, Plaintiff's complaint does not assert any other viable § 1983 claim against the Town, nor do the words "custom" or "policy" even appear in Plaintiff's complaint. Thus, there would be no basis to read any other claim outside the due process claim discussed herein into Plaintiff's complaint and the Court need not resolve the parties' arguments on this point.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss and/or for summary judgment is granted as to Plaintiff's claims for wrongful termination in violation of Real Property Tax Law § 310(2) and New York Public Officers Law § 36, civil service law § 75-b, First Amendment retaliation pursuant to 42 U.S.C. § 1983, and punitive damages, but it is denied as to Plaintiff's claims for violation of due process pursuant to 42 U.S.C. § 1983. Plaintiff's motion for summary judgment is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 24, 2025
          Rochester, New York

- 25 -